172 N.J. Super. 159 (1979)
411 A.2d 210
JANE E. JACOBS AND DANIEL A. JACOBS, HER HUSBAND, PLAINTIFFS,
v.
NORTH JERSEY BLOOD CENTER, DEFENDANT.
Superior Court of New Jersey, Law Division  Somerset County.
Decided November 28, 1979.
*160 Wharton, Stewart & Davis for plaintiff (Timothy Boderck appearing).
McDermott & McGee for defendant (James B. Sharp appearing).
IMBRIANI, J.S.C.
N.J.S.A. 2A-53A-7 confers immunity from tort liability upon nonprofit institutions "organized exclusively for religious, charitable, education or hospital purposes". (Emphasis supplied). This case presents the question whether a nonprofit corporation organized as a blood bank for the purpose of collecting, processing, storing and distributing blood is entitled to such immunity.
Defendant clearly was not organized for religious, educational or hospital purposes. At issue here is whether it was organized exclusively for charitable purposes.
Plaintiff participated in a voluntary blood drive sponsored by a local rescue squad. Defendant North Jersey Blood Center, through its doctors and nurses, was retained to extract blood from donors in the usual fashion by puncturing a vein in their arm with a needle. Plaintiff alleged that as a result of the negligent manner in which the procedure was performed upon her, she sustained damage to the median nerve in her arm.
Defendant collects blood from voluntary donors and distributes it either (1) to such donors and their immediate family in unlimited amounts without charge during the 12 months following the blood donation, or (2) by sale to nondonors at a fee which is equal to defendant's costs.
A jury found in favor of plaintiff. Defendant brought this motion for judgment notwithstanding the verdict on the ground *161 that it is immune from tort liability pursuant to N.J.S.A. 2A:53A-7.
We have seen the doctrine of charitable immunity undergo several changes in New Jersey in the past few decades. At common law a charitable institution was immune from tort liability. The reason most commonly expressed was that funds devoted to charitable objects should not be diverted to pay tort claims. 4 Scott, Trusts (3 ed. 1967), 3177. But Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958) repudiated the common law doctrine as "unsound in the light of modern conditions" (at 46) because not only does it run counter to "widespread principles which fairly impose liability on those who wrongfully and negligently injure others" (at 47) but, equally important, liability insurance is now available to protect the charitable funds from such diversion. However, the Legislature immediately repudiated Collopy and enacted N.J.S.A. 2A:53A 7 et seq., see the Temporary Act (L. 1958, c. 131) and the Permanent Act (L. 1959, c. 90) which restored charitable immunity to its judicial parameters prior to Collopy. Anasiewicz v. Sacred Heart Church, 74 N.J. Super. 532 (App.Div. 1962), certif. den. 38 N.J. 305 (1962).
Although the statute is to be "liberally construed so as to afford immunity ... in furtherance of the public policy for the protection" of charitable organizations, N.J.S.A. 2A:53A-10, it was pointed out in Lawlor v. Cloverleaf Memorial Park, Inc., 56 N.J. 326 (1970), that
... This direction for liberal construction is not pertinent here for it does not come into play until there is a determination that the institution seeking to assert the immunity is one organized for "religious, charitable, educational or hospital purposes" within the legislative contemplation. [at 327]
Generally, when an injured party has a common law right to sue a wrongdoer, statutory immunity in derogation of this right must be strictly construed. Potter v. Finch & Sons, 76 N.J. 499, 502 (1978). However, this statute is not in derogation *162 of the common law but was to restore it. So there is no rule of statutory construction to assist us, and what we must do is determine what the Legislature intended by the phrase "organized exclusively for charitable purposes." The statute does not provide a definition.
There is no question that North Jersey Blood Center is a nonprofit corporation, that it provides a useful, necessary and laudatory service to society, and that it was engaged within the nature of its purposes when the cause of action arose. But these determinations do not require a finding that defendant was organized exclusively for charitable purposes.
We must first ask  what is a charity? Ballentine v. Ballentine, 123 N.J. Eq. 577, 578 (E. & A. 1938), said that a "charity, in its legal sense, may be more fully defined as a gift." A gift in common parlance means to give or donate something to someone "for free." Webster's Third New International Dictionary, (unabridged 1976), defines a "charity" as "an organization or institution engaged in the free assistance of the poor, the suffering or the distressed." (Emphasis supplied). Implicit in these definitions of charity is the concept that the donor may not expect or receive anything of value in return for the gift or assistance given.
However, here the recipients of the blood did not receive anything "for free." Either they or an immediate member of their family had to be blood donors within the past year or they had to pay money to defendant for the blood. There is no gift or "free assistance." Every recipient must "pay" for the blood received; no one receives anything "for free."
This is not to say that any institution which receives something of value for its services is denied immunity. Historically, religious, educational and hospital organizations charge a fee or expect a donation for their services. This in no way detracts from their benevolent purposes. Society recognizes that these organizations, unlike a charity, provide services to the rich and poor alike, and it is only reasonable that those who can afford to *163 pay a fee should be required to do so. On the other hand, a charity gives only to the poor, the suffering or those in distress. And this unfortunate class of people, cannot afford to pay and should not be required to pay for what they receive. Cf. Hauser v. Y.M.C.A., 91 N.J. Super. 172 (Law Div. 1966), which extended immunity even though defendant received a fee, because such "fees do not begin to cover the entire cost of operating its extensive facilities" and defendant had to turn "to fund-raising to carry out its major purpose." (At 178).
One could say that each recipient of blood received a partial gift because he received the blood at less than its cost on the open market. But an institution organized partially for charitable purposes is not entitled to the statutory immunity. It must be organized exclusively for charitable purposes. And, as used in the statute, "exclusively" means for the "single" or "sole" purpose of charity. Kirby v. Columbian Institute, 101 N.J. Super. 205, 208 (Cty.Ct. 1968).
While defendant certainly provides a great benefit to the public, it is not egalitarian in its dealings or membership. It restricts the class of people with whom it deals to those who have donated blood within the prior 12 months and those who can afford to pay. Indeed, by its constitution it even limits its membership to blood donors during the one year after the date of the blood donation and anyone chosen by the board of trustees.
There is nothing in the legislative history of N.J.S.A. 2A:53A-7 et seq. to suggest that a blood center should receive immunity. Indeed N.J.S.A. 2A:53A 9 designates many places which are used for specifically enumerated purposes shall be "deemed to be operated and maintained for a religious, charitable, educational or hospital purpose." An institution organized to collect, process, store and distribute blood is not enumerated therein.
Thus, in Hauser v. Y.M.C.A., supra, defendant was found to be operating for the "moral and mental improvement" of individuals, *164 and in Gould v. Theresa Grotta Center, 83 N.J. Super. 169 (Law Div. 1964), defendant operated as a "nursing home." Both of these uses are specifically accorded immunity by N.J.S.A. 2A:53A-9, even though they charge a fee for some of their services and are not the usual or traditional institutions one would define as being operated for a religious, charitable, educational or hospital purpose.
This court concludes that North Jersey Blood Center is not operated exclusively for charitable purposes, nor is it entitled to the special treatment provided by N.J.S.A. 2A:53A 9. In view of this finding it is not necessary to inquire whether plaintiff was a beneficiary of defendant's benefactions. But see Bixenman v. Christ Episcopal Church Parish House, 166 N.J. Super. 148 (App.Div. 1979), for examples of same. The motion for judgment notwithstanding the verdict is denied.