743 A.2d 893

EDWARD BIEKER, JR., A MINOR BY HIS GUARDIANS AD LITEM, MICHELLE BIEKER AND EDWARD BIEKER, SR., AND MICHELLE BIEKER AND EDWARD BIEKER, SR., INDIVIDUALLY, PLAINTIFFS–APPELLANTS, v. COMMUNITY HOUSE OF MOORESTOWN, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 19, 1999—Decided January 25, 2000.

Before Judges SKILLMAN, D'ANNUNZIO and NEWMAN.

*Alan H. Sklarsky* argued the cause for appellants (*Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano*, attorneys; *Salvatore J. Siciliano*, on the brief).

*Michael A. Katz* argued the cause for respondent (*Crawshaw, Mayfield, Turner, O'Mara, Donnelly & McBride*, attorneys; *Joseph A. Carita*, on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

The issue presented by this appeal is whether defendant Community House of Moorestown (Community House), a non-profit corporation that rents facilities to non-profit organizations as well as profit-making entities and individuals, is entitled to immunity from suit under the Charitable Immunity Act, *N.J.S.A.* 2A:53A–7 to –11. We conclude that Community House does not enjoy such immunity because it is not "organized exclusively for religious, charitable or educational purposes." *N.J.S.A.* 2A:53A–7a.

Community House was incorporated in the 1920s. The articles of incorporation stated that Community House was formed to obtain charitable contributions for the purchase or construction of a building that would be devoted to carrying out the objectives of other organizations that were operated exclusively for religious,

charitable, scientific, literary or educational purposes. The articles stated that the anticipated users of Community House's facilities included the Church Federation of Moorestown, the Moorestown Branch of the American Red Cross, the Moorestown Young Mens Christian Association, the Women's Club of Moorestown and the Moorestown Visiting Nurse Association. The articles of incorporation also provided that if a user of Community House's facilities engaged in any activity that was not exclusively religious, charitable, scientific, literary or educational, it would be immediately excluded from the property.

However, with the passage of time, Community House abandoned the limitations it had originally imposed on users of its facilities and adopted a policy of renting to any organization or individual willing to pay the required fee. The only distinction Community House now maintains among users of its facilities is that it charges lower rental fees to non-profit organizations than to other parties for the use of some of its facilities.

Community House's facilities include a gym, swimming pool, club room, kitchen and meeting rooms. These facilities are available for rental for a wide variety of functions, including dance classes and other recreational activities, piano recitals, corporate workshops and seminars, birthday and anniversary parties, wedding receptions and baby showers. Community House also rents banquet tables, chairs, card tables, coffee pots, audiovisual equipment and sound systems for such activities.

The users of Community House's facilities include non-profit organizations such as the Y.M.C.A., which conducts educational and recreational programs, and large corporations such as Lockheed–Martin, which engages in a variety of corporate activities on the premises. Community House also rents rooms to ballet, step aerobics and karate instructors, who charge fees to participants in their classes.

Community House's operations are funded by rental fees, donations and income from a trust. The record does not indicate what

percentage of Community House's funding comes from each of these sources.

Plaintiff Edward Bicker, Sr. was one of a group of men who rented Community House's gym on a regular basis to play basketball. The group paid Community House a rental fee of thirty dollars per hour, which was the same fee Community House charged any user of its gym, including a non-profit entity.

On May 2, 1996, Bieker, Sr.'s three-and-a-half year old son, Edward Bieker, Jr., accompanied his father to Community House's gym. During a basketball game, Bieker, Jr. wandered out of the gym onto an adjoining fire escape, slipped through the guardrails, fell a distance of approximately seven feet and suffered a head injury.

This action was subsequently brought by Bieker, Jr. and his parents against Community House seeking damages for Bieker, Jr.'s personal injuries. Community House moved for summary judgment on the ground that plaintiffs' claims are barred by the Charitable Immunity Act. The trial court initially deferred ruling on the motion to afford plaintiffs an opportunity to depose Community House's Executive Director. After the deposition, the trial court issued a brief written opinion which concluded that "an organization ... established to serve the recreational and social needs of the community and to reap no profits" has a "charitable" purpose and consequently is entitled to charitable immunity.

*N.J.S.A.* 2A:53A–7a provides in pertinent part:

> No nonprofit corporation, society or association *organized exclusively for religious, charitable or educational purposes* ... shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association. ... [1]

---

[1] A hospital also enjoys a limited form of charitable immunity, under which a beneficiary of its services may not recover damages in excess of $250,000. *N.J.S.A.* 2A:53A–7b, –8. *N.J.S.A.* 2A:53A–7 formerly set forth a hospital's immunity in the same language as the immunity provided non-profit entities organized exclusively for religious, charitable or educational purposes. However, under a

[Emphasis added.]

In addition, *N.J.S.A.* 2A:53A–9 provides:

> For the purposes of this act but not in limitation thereof, *the buildings and places actually used for* colleges, schools, academies, seminaries, historical societies, public libraries, religious worship, *charitable* or hospital *purposes,* the moral and mental improvement of men, women and children, nursing homes, rest homes, parish houses, auditoriums, houses of and for prayer and buildings and places, however named or designated, operated and maintained for equivalent uses, *when so operated and maintained* by any such nonprofit corporation, society or association, *shall be deemed to be operated and maintained for a* religious, *charitable,* educational or hospital *purpose.*

[Emphasis added.]

 Thus, the threshold issue in any case involving a charitable immunity claim is whether the defendant non-profit corporation, society or association is "organized exclusively for religious, charitable or educational purposes." In considering this issue, it should be kept in mind that the legislative directive that the Charitable Immunity Act "shall be liberally construed," *N.J.S.A.* 2A:53A–10, "does not come into play until there is a determination that the institution seeking to assert the immunity is one organized for 'religious, charitable [or] educational ... purposes.'" *Lawlor v. Cloverleaf Memorial Park, Inc.,* 56 *N.J.* 326, 337, 266 *A.*2d 569 (1970).

 This is an unusual charitable immunity case. The prior cases that have presented questions concerning the meaning of the statutory phrase, "organized exclusively for religious, charitable or educational purposes," have all involved non-profit entities which themselves conducted programs that were alleged to qualify for charitable immunity. *See, e.g., Morales v. New Jersey Academy of Aquatic Sciences,* 302 *N.J.Super.* 50, 53–55, 694 *A.*2d 600 (App.Div.1997) (State Aquarium); *Pomeroy v. Little League Baseball of Collingswood,* 142 *N.J.Super.* 471, 362 *A.*2d 39 (App.Div.

---

1995 amendment, *L.* 1995, *c.* 183, § 1, *N.J.S.A.* 2A:53A–7 is now divided into subsections. The immunity of religious, charitable and educational non-profit entities is set forth in *N.J.S.A.* 2A:53A–7a, and the immunity of hospitals is covered by *N.J.S.A.* 2A:53A–7b.

1976) (Little League baseball); *Peacock v. Burlington County Historical Soc'y*, 95 *N.J.Super.* 205, 230 *A.*2d 513 (App.Div.) (historical society), *certif. denied*, 50 *N.J.* 290, 234 *A.*2d 399 (1967); *Hauser v. Young Men's Christian Ass'n of Rahway*, 91 *N.J.Super.* 172, 219 *A.*2d 532 (Law Div.1966) (Y.M.C.A.); *Stoolman v. Camden County Council Boy Scouts of America*, 77 *N.J.Super.* 129, 185 *A.*2d 436 (Law Div.1962) (Boy Scouts). But unlike the Boy Scouts or a Y.M.C.A., Community House does not itself operate programs. Instead, it rents to other entities or individuals which conduct a variety of programs in Community House's facilities.

Nevertheless, we assume, without deciding, that a non-profit entity that rents facilities exclusively to other non-profit entities "organized exclusively for religious, charitable or educational purposes" would be entitled to immunity under the Charitable Immunity Act. We note with respect to this point that *N.J.S.A.* 2A:53A–9 expressly states that "the buildings and places actually used for ... charitable [and other qualifying] purposes, shall be deemed to be operated and maintained for a religious, charitable, educational or hospital purpose." Therefore, if Community House could show that its facilities were used "exclusively for religious, charitable or educational purposes," it presumably would be entitled to immunity under *N.J.S.A.* 2A:53A–7 and –9 even though its only role in pursuing one or more of those purposes was to rent facilities to other non-profit entities which conduct qualifying programs.

The essential point, however, is that the right of an entity such as Community House to claim charitable immunity is purely derivative. Because Community House does not itself conduct programs within its facilities, but instead rents to other entities and individuals, its entitlement to charitable immunity depends on the nature of the programs conducted by those entities and individuals.

Viewed in this light, it is clear that Community House, as presently administered, is not "organized exclusively for religious, charitable or educational purposes." Although Community House

rents facilities to some organizations, such as the Y.M.C.A., which conduct qualifying "charitable" or "educational" programs, it also rents facilities to various private individuals and profit-making entities which engage in activities that clearly are not charitable or educational, such as corporate meetings and workshops, weddings, baby showers and birthday parties. Because charitable immunity is limited to non-profit entities that are organized "exclusively" for religious, charitable or educational purposes, the use of Community House's facilities for non-qualifying purposes precludes it from claiming immunity.

We note that Community House does not extend any preference to non-profit entities in scheduling times for use of its facilities. Instead, Community House rents its facilities essentially on a "first come, first serve" basis, which means that Lockheed–Martin has the same opportunity as the Boy Scouts to rent its facilities. The record also indicates that a substantial portion of Community House's rentals are made to parties other than non-profit entities. Therefore, there is no basis for Community House to argue that it is entitled to immunity under *N.J.S.A.* 2A:53A–7 and –9 because its facilities are used primarily for religious, charitable or educational purposes, and that any other uses are merely incidental and subordinate to those uses.

Furthermore, Community House cannot be said to be operated and maintained "exclusively" for "charitable" purposes solely because it rents some of its facilities to non-profit entities for a lower fee than it charges other users. Even profit-making commercial ventures such as amusement parks and bowling alleys sometimes offer discounts from their normal charges to non-profit groups such as the Boy Scouts or a Y.M.C.A.

We recognize that Community House renders an important public service to the residents of Moorestown and surrounding communities by providing facilities for meetings, recreation and social activities. However, as we observed in *Parker v. St. Stephen's Urban Dev. Corp.*, 243 *N.J.Super.* 317, 324–25, 579 *A.2d* 360 (App.Div.1990), "the performance of useful service does not

*per se* compel the corollary that a corporation meets the standard for charitable immunity." The immunity from suit provided by the Charitable Immunity Act is a "highly special immunity," which is only "afforded to associations 'organized exclusively for religious, charitable, educational or hospital purposes.'" *Lawlor, supra,* 56 *N.J.* at 331, 266 *A.*2d 569. Consistent with this limitation, our courts have held that charitable immunity does not extend to various non-profit entities that perform vital public services. *See, e.g., Lawlor, supra* (cemetery association); *Parker, supra* (low income housing complex subsidized with federal funds and operated by church); *Jacobs v. North Jersey Blood Ctr.,* 172 *N.J.Super.* 159, 411 *A.*2d 210 (Law Div.1979) (blood bank). Similarly, we conclude that Community House is not entitled to immunity under the Charitable Immunity Act.

Accordingly, the order dismissing plaintiffs' complaint is reversed and the case is remanded to the trial court for further proceedings.