777 A.2d 37

EDWARD BIEKER, JR., A MINOR BY HIS GUARDIANS AD LITEM, MICHELLE BIEKER AND EDWARD BIEKER, SR.; AND MICHELLE BIEKER AND EDWARD BIEKER, SR., INDIVIDUALLY, PLAINTIFFS–RESPONDENTS, v. COMMUNITY HOUSE OF MOORESTOWN, A NEW JERSEY CORPORATION, DEFENDANT–APPELLANT.

Argued November 27, 2000—Decided July 23, 2001.

168

*Michael J. O'Mara* argued the cause for appellant (*Crawshaw, Mayfield, Turner, O'Mara, Donnelly & McBride*, attorneys; *Michael A. Katz*, on the briefs).

*Michael A. Kaplan* argued the cause for respondents (*Tomar, O'Brien, Kaplan, Jacoby & Graziano*, attorneys; *Alan H. Sklarsky*, of counsel; *Carlos M. Bollar*, on the brief).

The opinion of the Court was delivered by

PORITZ, C.J.

We are called on in this case to determine whether Moorestown Community House, Inc. (Community House), a nonprofit corporation that operates and rents meeting rooms and athletic facilities to charitable organizations, for-profit entities, and the general public, is entitled to immunity from suit under the Charitable Immunity Act, *N.J.S.A.* 2A:53A–7 to –11. The question arises because *N.J.S.A.* 2A:53A–7a states that an entity seeking the protection of the Act must be "organized exclusively for religious, charitable or educational purposes." Plaintiff contends that because for-profit entities and the general public pay rental fees to Community House it is not organized exclusively as a charity. We

hold that activities designed to raise monies in support of a charitable organization's core purposes generally contribute to those purposes and do not change the " 'essence of the entity itself.' " *Snyder v. American Ass'n of Blood Banks,* 144 *N.J.* 269, 305, 676 *A.*2d 1036 (1996) (quoting *Parker v. St. Stephen's Urban Dev. Corp., Inc.,* 243 *N.J.Super.* 317, 327, 579 *A.*2d 360 (App.Div. 1990)). Only when those non-charitable activities become the "dominant motive" of the organization do we have "some other form of enterprise" such that the organization will lose its immunity under the statute. *Parker, supra,* 243 *N.J.Super.* at 325, 579 *A.*2d 360.

## I

Edward Bieker, Sr., was a frequent patron of the Community House gymnasium where he participated in an informally organized adult men's basketball group that paid rental fees to Community House for use of its facilities. On May 2, 1996, Edward, Sr., brought his three-and-a-half year old son, Edward, Jr., with him to the Community House gymnasium. During his father's basketball game, the child kept himself occupied by playing with a basketball. Unfortunately, when chasing after his ball, the child left the gymnasium area through doors that led onto an adjoining fire escape and fell a distance of approximately seven feet, suffering serious injury.

The Biekers, as guardians ad litem for Edward, Jr., brought this lawsuit seeking damages for their son's personal injuries. Community House responded by motion for summary judgment, claiming immunity from liability under the Charitable Immunity Act, *N.J.S.A.* 2A:53A–7 to –11, based on its status as an independent, nonprofit corporation created to meet the social and recreational needs of the community. The trial court granted defendant's motion, concluding that "[a]n organization ... established to serve [such purposes] ... and to reap no profits" has a "charitable" purpose and consequently is entitled to charitable immunity.

The Appellate Division reversed. *Bieker v. Community House of Moorestown,* 327 *N.J.Super.* 467, 743 *A.*2d 893 (App.Div.2000). It considered this case atypical "[b]ecause Community House does not itself conduct programs within its facilities, but instead rents to other entities and individuals." *Id.* at 473, 743 *A.*2d 893. According to the panel, any immunity claimed by Community House is therefore "derivative" and "depends on the nature of the programs conducted by those entities and individuals." *Ibid.* The court held that since Community House "rents facilities to various private individuals and profit-making entities which engage in activities that clearly are not charitable or educational, . . . . [it is not] organized 'exclusively' for religious, charitable or educational purposes" as required by statute. *Id.* at 474, 743 *A.*2d 893.

We granted Community House's petition for certification and now reverse.

## II

The Articles of Incorporation of Community House set forth the purposes for which the corporation was formed more than seventy years ago. Article IIA specifically states the founders' intent to provide

> for the purchase or construction and maintenance and operation of a building or buildings ... [that] shall be devoted to and used exclusively for the benefit and purposes ... of corporations and organizations that are or may be hereafter incorporated ... for religious, charitable, scientific, literary and educational purposes.

The corporations and organizations identified in the articles include a Post of the American Legion, the Church Federation of Moorestown, the Moorestown Free Library Association, the Moorestown Young Men's Christian Association (YMCA), the Women's Club of Moorestown, the Moorestown Visiting Nurse Association, and any other like incorporated entities.

In a recent brochure, however, Community House describes its purposes somewhat differently:

> The Moorestown Community House is a unique institution. Founded expressly to meet the social and recreational needs of organizations and individuals, the House has been serving the community continuously since we opened our doors in 1926.

Indeed, in the years between its incorporation and the present, Community House has adopted a policy of renting its facilities to any interested organization or member of the public. Those facilities include a gymnasium, swimming pool, kitchen, and several air-conditioned rooms capable of handling meetings and social functions. Patrons rent the several rooms, the gymnasium, and the pool for a variety of activities, including dance classes, ballet and karate lessons, piano recitals, meetings, seminars, birthday and anniversary parties, wedding receptions, and baby showers. To support those activities, and for an additional fee, Community House also makes available banquet tables, chairs, card tables, coffee pots, audiovisual equipment, and sound systems.

As an independent non-profit entity, Community House receives no financial or other assistance from government; rather, its revenues are derived solely from rental fees, donations, and trust account income. It is registered as a 501(c)(3) organization with the Internal Revenue Service, and as a charity with the New Jersey Division of Consumer Affairs. In recognition of its charitable mission, Community House charges nonprofit organizations lower rents, except that all users of the gymnasium pay $30 per hour. It claims, however, that pool fees constitute the largest source of its rental income, and that most of those fees are paid by nonprofit entities such as the YMCA, the Town of Moorestown, and the senior swimming program. Community House does not charge membership fees and frequently runs an operating deficit that it covers with interest generated by its trust fund.

## III

### A

The doctrine of charitable immunity was first recognized in New Jersey in *D'Amato v. Orange Memorial Hospital,* 101 *N.J.L.* 61, 127 *A.* 340 (E. & A.1925). Its roots are found in the common law

principle described by Justice Burling in *Jones v. St. Mary's Roman Catholic Church:*

[I]t would be contrary to the interests of society that funds dedicated to a charitable use be permitted to be diverted or diminished by the payment of judgments resulting from the torts of agents, servants or employees of the organization or institution administering the charity where suit is instituted by the beneficiary of the charity.

[7 *N.J.* 533, 537, 82 *A.*2d 187 (1951).]

That principle was ultimately rejected by this Court. In a trilogy of cases that reconsidered the doctrine of charitable immunity from the perspective of the injured plaintiff, we reasoned: "Due care is to be expected of all, and when an organization's negligent conduct injures another there should, in all justice and equity, be a basis for recovery without regard to whether the defendant is a private charity." *Collopy v. Newark Eye and Ear Infirmary,* 27 *N.J.* 29, 39, 141 *A.*2d 276 (1958); *accord Dalton v. St. Luke's Catholic Church,* 27 *N.J.* 22, 141 *A.*2d 273 (1958); *Benton v. YMCA,* 27 *N.J.* 67, 141 *A.*2d 298 (1958).

The Legislature responded to the Court's decisions a year later by passing the Charitable Immunity Act.[1] *N.J.S.A.* 2A:53A–7 to – 11. By that Act, "the common law doctrine as it had been judicially defined by the courts of this State" was restored. *Schultz v. Roman Catholic Archdiocese,* 95 *N.J.* 530, 533, 472 *A.*2d 531 (1984) (internal quotations omitted). In relevant part, *N.J.S.A.* 2A:53A–7a provides:

No nonprofit corporation ... organized exclusively for religious, charitable or educational purposes ... shall ... be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation ... where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation ...; provided however, that such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation ... where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation....

---

[1] A temporary statute identical to the Charitable Immunity Act was passed almost immediately after the decisions. *N.J.S.A.* 16:1–48 to 53. That statute expired in 1959 and was reenacted at that time.

■ Under Section 7a of the Act, an entity qualifies for charitable immunity when it "(1) was formed for non-profit purposes; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was promoting such objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works." *Hamel v. State*, 321 *N.J.Super.* 67, 72, 728 *A.*2d 264 (App.Div.1999); *accord Loder v. St. Thomas Greek Orthodox Church*, 295 *N.J.Super.* 297, 301, 685 *A.*2d 20 (App.Div. 1996) ("[I]n litigation concerning the Act, the focus is on whether the organization is a charitable association, and whether the injured plaintiff is a 'beneficiary' of its charitable works.")

Because it is undisputed that Community House is a nonprofit entity, we begin our analysis with the question whether Community House is organized exclusively for charitable purposes.

## B

■ In *Presbyterian Homes v. Division of Tax Appeals*, 55 *N.J.* 275, 284, 261 *A.*2d 143 (1970), we grappled with the definition of "charitable purposes" in order to evaluate the tax exempt status of a senior citizens' housing complex under *N.J.S.A.* 54:4–3.6. Albeit in a different context, we observed that "the determination of whether property is devoted to charitable purposes depends upon the facts or circumstances of each case." *Presbyterian Homes, supra*, 55 *N.J.* at 285, 261 *A.*2d 143. As a guide to that determination, we turned to a definition of charitable purposes formulated by the Illinois Supreme Court:

> [A]n application of property for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering and constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens on government.
>
> [*Id.* at 284, 261 *A.*2d 143 (emphasis omitted) (quoting *Coyne Elec. Sch. v. Paschen*, 12 *Ill.*2d 387, 398, 146 *N.E.*2d 73 (1957)).]

Although the provision of housing for indigent or ailing senior citizens undoubtedly serves such a purpose, Presbyterian Homes reserved the right to force the residents of the complex to return

to their families or be placed elsewhere when they "bec[a]me either financially unable to meet their monthly charges or unmanageable because of illness." *Id.* at 286, 261 *A.*2d 143.[2] For that reason, among others, we held that the property in *Presbyterian Homes* was "not 'actually' used for 'charitable' purposes." *Id.* at 288, 261 *A.*2d 143.

More recently, in *Loder v. St. Thomas Greek Orthodox Church, supra,* the Appellate Division concluded that churches provide a wide range of charitable activities associated with their core religious purposes, and that those activities are within the purview of the Act:

Although a church's main purpose may be to provide a place of worship and spiritual guidance,

[its] function is not so narrowly confined. It is not limited to sectarian teaching and worship. In [the] modern view, exercises designed to aid in the advancement of the spiritual, moral ethical and cultural life of the community in general are deemed within the purview of the religious society. A social center is now commonly regarded as a proper adjunct of the local church—conducive to the public good, as well as advantageous to the congregation.

[295 *N.J.Super.* at 302, 685 *A.*2d 20 (quoting *Bianchi v. South Park Presbyterian Church,* 123 *N.J.L.* 325, 332–33, 8 *A.*2d 567 (E. & A.1939)).]

Consonant with its broad reading of charitable purposes, the panel held that a Greek festival organized by the church, at which meals were sold and dances performed, furthered the "charitable objectives [the church] was organized to advance." *Id.* at 303, 685 *A.*2d 20 (internal quotations omitted).

The import of our caselaw is that "a wide range of nonprofit organizations that provide educational opportunities or other services which promote the public welfare" are deemed to have charitable purposes. *Morales v. New Jersey Academy of*

---

2 We also observed in *Presbyterian Homes* that charging a fee for services would "not necessarily deny a charitable purpose." *Id.* at 287, 261 *A.*2d 143; *see also Rupp v. Brookdale Baptist Church,* 242 *N.J.Super.* 457, 465, 577 *A.*2d 188 (App.Div.1990) (holding day camp operated by church for fee "was a charitable undertaking"); *Casper v. The Cooper Hosp.,* 26 *N.J.Super.* 535, 540, 98 *A.*2d 605 (App.Div.1953) (stating that doctrine of charitable immunity is "applicable even where the person injured has paid for the services rendered by the charity").

*Aquatic Sciences,* 302 *N.J.Super.* 50, 53–54, 694 *A.*2d 600 (App. Div.1997); *see also Pomeroy v. Little League Baseball,* 142 *N.J.Super.* 471, 474, 362 *A.*2d 39 (App.Div.1976) (holding nonprofit organization's "teaching and supervision of baseball skills" serves educational purpose); *Heffelfinger v. Town of Morristown,* 209 *N.J.Super.* 380, 388, 507 *A.*2d 761 (Law Div.1985) (holding nonprofit entity that maintains small public park serves charitable purpose). In this case, as evidenced by defendant's Articles of Incorporation and distributed literature, Community House was organized and is maintained to provide facilities for the social and recreational needs of organizations and individuals. Through the provision of those facilities, Community House operates as a center of community life for the people of Moorestown and its surrounds, thereby serving a recognized charitable purpose. And, as pointed out by the Appellate Division, under *N.J.S.A.* 2A:53A–9, "buildings ... actually used for ... charitable ... purposes, ... shall be deemed to be operated and maintained for a religious, charitable, educational or hospital purpose."

■ The Appellate Division concluded, however, that by renting facilities to members of the public and for-profit entities, Community House has deviated from the statutory requirement that it must be "organized exclusively" for charitable purposes.[3] *Bieker, supra,* 327 *N.J.Super.* at 473–74, 743 *A.*2d 893. In respect of defendant's permitting the public-at-large to use its facilities for celebrations such as weddings and birthday parties, or for piano recitals, dance classes, sports, and other similar activities, we find that those uses meet important social and recreational needs of the community. Indeed, such celebrations, classes and sports activities take place on the premises of many religious and charitable organizations, including churches, synagogues, the YMCA, and

---

[3] The Appellate Division assumed, without deciding, that "a nonprofit entity that rents facilities exclusively to other non-profit entities 'organized exclusively for religious, charitable or educational purposes' would be entitled to immunity under the Charitable Immunity Act." *Bieker, supra,* 327 *N.J.Super.* at 473, 743 *A.*2d 893.

others. Although its Articles of Incorporation appear to limit Community House to providing facilities for only charitable, educational and religious organizations, we consider an expansion of those initial restrictions to be relevant to the issue at hand only when that expansion is unrelated to an appropriate charitable purpose. That is not the case here.

■ For-profit entities present a different issue. Plaintiff alleges that Community House rents its facilities to local businesses although the limited record on summary judgment fails to inform us about the scope and type of those rentals. Assuming that for-profit use is substantial, a question is raised whether the "dominant motive [of Community House] is charity or some other form of enterprise." *Parker, supra,* 243 *N.J.Super.* at 325, 579 *A.*2d 360.

In *Parker,* St. Stephen's A.M.E. Zion Church organized a nonprofit corporation to serve as a conduit for federal funds that, with rental payments, would cover the costs of low and moderate income housing built by the corporation. Essentially because no charitable donations or trust funds were used to support the project, the court held that "notwithstanding its benevolent aims," the corporation could not obtain the protection of the Charitable Immunity Act. *Id.* at 328, 579 *A.*2d 360. Justice Long, then a judge of the Appellate Division, explained:

> Equally important is the absence from defendant's operation of fund-raising activities and charitable contributions. As far as our research reveals, no New Jersey case has ever applied the immunity statute in circumstances such as these. Private charitable contributions have been involved at least in part in every case in which immunity has been conferred. This is understandable in light of the fact that the essence of the public policy favoring charitable immunity is the preservation of private charitable contributions for their designated purposes.
>
> [*Id.* at 326, 579 *A.*2d 360 (citations omitted).]

■ *Parker* teaches that an organization claiming immunity under the Act must demonstrate some level of support from charitable donations and/or trust funds as it is those sources of income the Act seeks to protect. That does not mean, however, that income from some limited noncharitable activity would pre-

vent a corporation not otherwise ineligible from obtaining immunity under the Act. Such a result would call into doubt the status of any charitable, religious or educational organization that holds fund-raisers or bake sales, or conducts bingo nights. *See, e.g., Book v. Aguth Achim Anchai,* 101 *N.J.Super.* 559, 564, 245 *A.*2d 51 (App.Div.1968) (holding, without questioning status of religious organization, that plaintiff injured during bingo game was not beneficiary of organization's "works"). Generally, those activities are an adjunct to the organization's core purpose if only because they provide a source of income, in addition to charitable donations and trust funds, that enables the organization to carry out that purpose. Community House, for example, has run an operating deficit for several years and apparently uses the higher fees charged to for-profit entities to offset losses.

The difficulty in this case is that aside from Lockheed–Martin, the record does not indicate whether other for-profit entities use Community House facilities. Community House claims that the amount of fees collected from such entities is minimal, and points out that 19% of its operating budget is derived from renting permanent office space to nonprofits. Defendant also claims that pool fees constitute the largest source of its rental income (one-third), most of which is paid by nonprofits such as the YMCA, the Town of Moorestown, and the senior swimming program. Its 1999 Federal Tax Return indicates that Community House collected $293,398 in rental fees, $42,988 in charitable donations, and $65,143 in interest on its trust account.

Even with that information, however, we cannot tell how much of the rental fee income derives from entities that operate for profit. We therefore remand this matter to the trial court for an initial determination whether the "dominant motive [here] is charity or some other form of enterprise." *Parker, supra,* 243 *N.J.Super.* at 325, 579 *A.*2d 360. Only if rentals by for-profit entities have become a dominant use should Community House be denied immunity under the Act. We leave it to the trial court to

determine whether a hearing is necessary to make that determination.

## C

■  The trial court found "that [Edward Jr.] (who was injured while playing basketball[) ] was a beneficiary of [Community House]." Although the Appellate Division did not reach that issue, if on remand it is determined that the dominant motive of Community House is charity, the question whether plaintiff was a beneficiary under the Act will be dispositive. In the interest of judicial economy, we decide the issue now.

*N.J.S.A.* 2A:53A–7a (emphasis added) provides:

No nonprofit corporation ... organized exclusively for religious, charitable or educational purposes ... shall ... be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation ... *where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation* ...; provided, however, that *such immunity from liability shall not extend to any person who shall suffer damage from the negligence of such corporation ... where such person is one unconcerned in and unrelated to and outside of the benefactions of such corporation* ....

It is uncontroverted that plaintiff's father brought his son to the Community House gymnasium when he played basketball there. After the child chased a ball he was bouncing, he fell from an adjoining fire escape and sustained injury. The child was plainly a recipient of Community House's "benefactions," even if only as a companion of his father and a spectator at his father's basketball game. *See Pomeroy, supra,* 142 *N.J.Super.* at 475, 362 *A.*2d 39 ("[A] spectator at a Little League baseball game is a beneficiary of defendant's works since .... at the time [she] was injured defendant was engaged in ... the charitable objectives it was organized to advance."); *Anasiewicz v. Sacred Heart Church,* 74 *N.J.Super.* 532, 537–38, 181 *A.*2d 787 (App.Div.1962) (holding that wedding guest was beneficiary of charitable benefactions of Sacred Heart Church). Viewing the facts in this context, plaintiff's "presence was clearly incident to accomplishment" of defendant's charitable purposes, *Gray v. St. Cecilia's Sch.,* 217 *N.J.Super.* 492, 495, 526 *A.*2d 264 (App.Div.1987), and thus plaintiff was a beneficiary of its

works. *Mayer v. Fairlawn Jewish Ctr.*, 38 *N.J.* 549, 553–54, 186 *A.*2d 274 (1962).

## IV

The judgment of the Appellate Division is reversed and the matter is remanded to the trial court for proceedings not inconsistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.