922 A.2d 761 (2007)
393 N.J. Super. 19
P.V., by her Guardians Ad Litem, T.V. and L.V., and T.V. and L.V., Individually, Plaintiffs-Appellants,
v.
CAMP JAYCEE, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 2007.
Decided May 10, 2007.
*762 Philip G. Auerbach, Red Bank, argued the cause for appellants.
Walter F. Kawalec, III, argued the cause for respondent (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Mr. Kawalec and Lary I. Zucker, Cherry Hill, on the brief).
Before Judges SKILLMAN, LISA and GRALL.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether the Charitable Immunity Act, N.J.S.A. 2A:53A-7 to -11, provides immunity to a New Jersey charity for a claim arising out of its alleged negligence in the operation of a summer camp in the State of Pennsylvania, which has abolished charitable immunity. We conclude that Pennsylvania's interest in applying its law subjecting charities to the same liability as profit-making entities outweighs New Jersey's interest in immunizing New Jersey charities from liability for alleged tortious conduct in another state.
Plaintiff P.V., a mentally challenged New Jersey resident, was an attendee at a summer camp in Effort, Pennsylvania, operated by defendant Camp Jaycee, a New Jersey charitable corporation. While at the camp, plaintiff was allegedly sexually assaulted by another attendee, causing her to suffer personal injuries.
P.V. and her parents, T.V. and L.V., as guardians ad litem for P.V. and individually, brought this personal injury action, alleging that Camp Jaycee and its agents, *763 servants and employees were "careless and negligent in the supervision of the patrons at the camp." After the end of discovery, Camp Jaycee moved for summary judgment on the ground that plaintiffs' action is barred by the Charitable Immunity Act. Plaintiffs opposed the motion on the ground that the alleged negligent conduct and sexual assault occurred in Pennsylvania, which does not immunize charitable organizations from tort liability.
The trial court concluded in a written opinion that, applying New Jersey's "governmental interests" test for determining choice of law issues, New Jersey's interest in protecting New Jersey charities from liability for their charitable endeavors outweighs Pennsylvania's interest in subjecting charities to the same rules of tort liability as other private entities. Accordingly, the court granted summary judgment dismissing plaintiffs' complaint.
When a lawsuit is brought in this State, New Jersey's choice-of-law rules are applied to determine which state's laws should govern the litigation. Erny v. Estate of Merola, 171 N.J. 86, 94, 792 A.2d 1208 (2002). In making this determination, our courts employ a "governmental-interests analysis" that involves "two steps." Rowe v. Hoffman-La Roche, Inc., 189 N.J. 615, 621, 917 A.2d 767 (2007). First, a court must determine whether there is an "actual conflict" between the laws of the interested states. Ibid. Second, if there is a conflict, a court must "determine the interest . . . each state has in resolving the specific issue in dispute[,]" id. at 621-22, 917 A.2d 767 (quoting Gantes v. Kason Corp., 145 N.J. 478, 485, 679 A.2d 106 (1996)), and "apply the law of the state with the greatest interest in governing the particular issue.'" Id. at 622, 917 A.2d 767 (quoting Veazey v. Doremus, 103 N.J. 244, 248, 510 A.2d 1187 (1986)).
There is a clear conflict between the laws of Pennsylvania and New Jersey regarding the immunity of charitable organizations. More than forty years ago, Pennsylvania abolished charitable immunity by judicial decision, and it has not subsequently reinstated the immunity. Flagiello v. Pennsylvania Hosp., 417 Pa. 486, 208 A.2d 193, 207-08 (1965); Nolan v. Tifereth Israel Synagogue, 425 Pa. 106, 227 A.2d 675, 677 (1967). Although the Supreme Court of New Jersey also abolished charitable immunity in Collopy v. Newark Eye & Ear Infirmary, 27 N.J. 29, 42-48, 141 A.2d 276 (1958) and Dalton v. St. Luke's Catholic Church, 27 N.J. 22, 24-25, 141 A.2d 273 (1958), the Legislature subsequently reinstated that immunity by enactment of New Jersey's Charitable Immunity Act. L. 1959, c. 90, § 1.
The Act currently provides in relevant part:
No nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes . . . shall . . . be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association. . . .
[N.J.S.A. 2A:53A-7.]
Since P.V. was a "beneficiary" of the summer camp operated by Camp Jaycee, this action would be barred by application of the New Jersey Charitable Immunity Act. But since Pennsylvania has abolished charitable immunity, this action could be maintained under Pennsylvania law.
We must therefore identify the interests of New Jersey and Pennsylvania in applying their laws regarding the tort liability of charities and determine which *764 state has the greater interest in its law governing the immunity issue. New Jersey's interest in applying its Charitable Immunity Act is the "preservation of private charitable contributions for their designated purposes." Bieker v. Cmty. House of Moorestown, 169 N.J. 167, 178, 777 A.2d 37 (2001) (quoting Parker v. St. Stephen's Urban Dev. Corp., 243 N.J.Super. 317, 326, 579 A.2d 360 (App.Div.1990)). However, the protection the Charitable Immunity Act provides to a charity's resources is limited. "Persons injured by the negligent conduct of charities domiciled in this State are free to sue them in tort provided they are not beneficiaries thereof, and our courts have tended to construe that status narrowly." Butkera v. Hudson River Sloop "Clearwater," Inc., 300 N.J.Super. 550, 555, 693 A.2d 520 (App.Div.1997). Moreover, even a charity's immunity from suit by beneficiaries is limited to negligence claims; the Charitable Immunity Act does not apply to "aggravated wrongful conduct, such as malice or fraud, or intentional, reckless and wanton, or even grossly negligent behavior." Hardwicke v. Am. Boychoir Sch., 188 N.J. 69, 97, 902 A.2d 900 (2006) (quoting Schultz v. Roman Catholic Archdiocese, 95 N.J. 530, 542, 472 A.2d 531 (1984) (Handler, J., dissenting)).
Pennsylvania's interest in subjecting charities to the same rules of tort liability as other private entities is two-fold: "[I]t both assures payment of an obligation to the person injured and gives warning that justice and the law demand the exercise of care." Flagiello, supra, 208 A.2d at 201 (quoting Bing v. Thunig, 2 N.Y.2d 656, 163 N.Y.S.2d 3, 143 N.E.2d 3, 8 (1957)). These two interests are sometimes referred to as, on the one hand, compensation and loss allocation and, on the other hand, conduct regulation. See Wendy Collins Perdue, Conflict of Laws, Comparative Law & Civil Law: A Reexamination of the Distinction Between "Loss Allocating" and "Conduct-Regulating Rules," 60 La. L.Rev. 1251 (2000). However, these interests are not separate and distinct. "All tort rules determine who will bear a loss and thus all are loss-allocating[,]" but most tort rules also "affect conduct." Id. at 1252. "Loss allocation creates incentives for those who must bear the loss to behave differently than they would if they did not bear the loss." Ibid.; see also Fu v. Fu, 160 N.J. 108, 123, 733 A.2d 1133 (1999) (noting that "every tort rule, to some extent, is designed both to deter and to compensate").
The Pennsylvania Supreme Court has used strong language to describe Pennsylvania's conduct-regulating interest in abolishing charitable immunity:
Human nature being what it is, administrators of a hospital, cognizant that the hospital is insulated from tort liability, may be less likely to exercise maximum scrutiny in selecting personnel than if the hospital were held monetarily liable for slipshod, indifferent, and neglectful conduct of employees. As Judge Rutledge said in the Georgetown [College v. Hughes, 130 F.2d 810, 824 (D.C.Cir. 1942)] case, "immunity tends to foster neglect while liability tends to induce care and caution."[1]
[Flagiello, supra, 208 A.2d at 202.]
Under New Jersey law, derived from section 145(2) of the Restatement (Second) of Conflict of Laws (1971), there *765 are four factors that must be considered in determining which state has the greatest interest in its law governing a particular issue of tort liability: "the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered." Fu, supra, 160 N.J. at 125, 733 A.2d 1133. However, these factors are not given equal weight. "In personal injury cases, . . . [w]hen both conduct and injury occur in a single jurisdiction, with only `rare exceptions, the local law of the state where conduct and injury occurred will be applied' to determine an actor's liability." Id. at 125-26, 733 A.2d 1133 (quoting Restatement, supra, § 145, comment d). "That is so because `a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there.'" Id. at 126, 733 A.2d 1133 (quoting Restatement, supra, § 145, comment d). Similarly, in Mastondrea v. Occidental Hotels Management, S.A., 391 N.J.Super. 261, 287, 918 A.2d 27 (App.Div.2007), we observed, quoting Spinozzi v. ITT Sheraton Corp., 174 F.3d 842, 844-45 (7th Cir. 1999):
[I]n the absence of unusual circumstances, the highest scorer on the "most significant relationship" test is [] the place where the tort occurred. For that is the place that has the greatest interest in striking a reasonable balance among safety, cost, and other factors pertinent to the design and administration of a system of tort law.
In this case, even though the parties are New Jersey residents and domiciliaries and Camp Jaycee operates primarily in New Jersey, both Camp Jaycee's negligent conduct and P.V.'s injury occurred in Pennsylvania. Consequently, Fu and Mastondrea indicate that Pennsylvania's law should determine whether Camp Jaycee is immune from plaintiffs' suit unless New Jersey's interest in immunizing Camp Jaycee from liability clearly outweighs Pennsylvania's interest in subjecting charities to the same rules of liability as other private entities.
Pennsylvania has a strong conduct-regulating interest in encouraging parties that engage in business operations within its boundaries, including charitable organizations, to exercise due care in the hiring, training and supervision of their employees. If Camp Jaycee fails to properly control participants in its summer camp program, such as the person who allegedly sexually assaulted P.V., those persons may pose a danger not only to other campers, who may include Pennsylvania residents, but also to employees of the camp, who also may include Pennsylvania residents,[2] as well as to persons who live in the surrounding area. Therefore, even though P.V. happens to be a New Jersey resident, Pennsylvania's interest in "induc[ing] care and caution" in the conduct of charitable organizations by subjecting them to liability for negligence that results in injury, Flagiello, 208 A.2d at 202, is promoted by application of its law to this litigation in the same way as to a claim against a Pennsylvania charity that operates a summer camp in Pennsylvania.
New Jersey's only interest in immunizing Camp Jaycee from liability for the injuries P.V. suffered as a result of the alleged sexual assault is to preserve charitable contributions for their designated purposes. However, as previously discussed, the protection this immunity provides for financial resources of charitable organizations is limited because it applies *766 only to negligence claims by beneficiaries. This limited immunity is now further limited by a 2006 amendment to the Charitable Immunity Act that subjects a charity to liability for "the negligent hiring, supervision or retention of any employee, agent or servant result[ing] in a sexual offense being committed against [a beneficiary of the charity] under the age of 18." L. 2005, c. 264, § 1; N.J.S.A. 2A:53A-7.4; see Hardwicke, supra, 188 N.J. at 99, 902 A.2d 900.[3]
In view of Pennsylvania's strong interest in encouraging charities to exercise due care in the conduct of their activities and providing compensation to victims of a charity's negligence and the limited protection the New Jersey Charitable Immunity Act provides to a charity's financial resources, we conclude that this case is not one of the "rare exceptions" to the general rule that "[w]hen both conduct and injury occur in a single jurisdiction, . . . `the local law of the state where conduct and injury occurred will be applied' to determine an actor's liability." Fu, supra, 160 N.J. at 125-26, 733 A.2d 1133 (quoting Restatement, supra, § 145, comment d).
Accordingly, the order dismissing plaintiffs' complaint is reversed, and the case is remanded to the trial court.
NOTES
[1] We note that when the Supreme Court of New Jersey abolished charitable immunity, it also observed that "immunity tends to foster neglect while liability tends to induce care and caution[.]" Collopy, supra, 27 N.J. at 41, 141 A.2d 276 (quoting E.H. Schopler, Annotation, Immunity of Nongovernmental Charity from Liability for Damages in Tort, 25 A.L.R.2d 29, 58 (1952)).
[2] The record before us does not indicate the residence of Camp Jaycee campers or staff.
[3] Since plaintiffs' brief indicates that P.V. is a twenty-year-old female, the present case would not fall within this exception to the Charitable Immunity Act even if plaintiffs' complaint could be read to assert a claim for Camp Jaycee's alleged negligent hiring, supervision or retention of employees.