NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3606-15T4
SABRINA LOSADA and
HENRY LOSADA,

 Plaintiffs-Appellants,

v.

PRINCETON UNIVERSITY,

 Defendant-Respondent,

and

PRINCETON TIGERS AQUATIC
CLUB,

 Defendant.

_____________________________________

 Submitted June 6, 2017 – Decided August 24, 2017

 Before Judges Reisner and Rothstadt.

 On appeal from the Superior Court of New
 Jersey, Law Division, Mercer County, Docket
 No. L-0057-14.

 Gluck & Allen, LLC, attorneys for appellants
 (Robert W. Allen and Daniel G. Leone, on the
 briefs).

 Eckert Seamans Cherin & Mellott, LLC,
 attorneys for respondent (Michael A. Spero
 and Jill R. Cohen, on the brief).

PER CURIAM
 Plaintiffs Sabrina Losada and her husband Henry Losada appeal

from the Law Division's dismissal of their complaint on summary

judgment entered in favor of defendant, Princeton University

(Princeton). Plaintiffs filed suit against Princeton and

defendant Princeton Tigers Aquatic Club (PTAC) for damages arising

from personal injuries Sabrina1 sustained from a fall that occurred

on Princeton's property as she left a PTAC swim meet in which her

child participated. PTAC is unaffiliated with Princeton other

than renting a facility from it to hold the swim meet. After

plaintiffs settled with PTAC, Princeton filed a motion for summary

judgment, arguing it was immune from liability pursuant to the

Charitable Immunity Act (CIA), N.J.S.A. 2A:53A-7 to -11. The

motion judge agreed and dismissed plaintiffs' complaint.

 On appeal, plaintiffs contend that the judge erred by not

recognizing that Princeton's renting its facility to PTAC was not

part of its pursuit "of educational objectives it was organized

to advance" and therefore was not entitled to charitable immunity.

We disagree and affirm.

 The facts considered in the light most favorable to plaintiff,

see Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577

(2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523

1
 We refer to plaintiffs by their first names to avoid confusion.

 2 A-3606-15T4
(1995)), are summarized as follows. On January 14, 2012,

plaintiffs attended their fourteen-year-old daughter's swim meet,

held at Princeton's DeNunzio pool and hosted by PTAC, a youth swim

team that is not affiliated with Princeton. Upon exiting the

building, Sabrina stepped into a depression located directly next

to a walkway, fell, and sustained injuries.

 Princeton is an educational institution offering

undergraduate and graduate degrees and is exempt from taxation

under § 501(c)(3) of the Internal Revenue Code (IRC).

Additionally, Princeton qualifies as a public charity under IRC §

170(c). Princeton's charter states its "purposes . . . are the

conduct of a university not for profit, including colleges and

schools affiliated therewith, in various branches within or

without [New Jersey]."

 PTAC is a private swim team that also provides swimming

lessons to children between the ages of six and eighteen. PTAC

rented the DeNunzio pool from Princeton for swim meets and

practices.

 The motion judge determined that summary judgment should be

awarded to Princeton, as he found that Sabrina was a beneficiary

of Princeton's educational goals within the meaning of the CIA

because "Princeton was engaged in the performance of the charitable

objective it was organized to advance" and plaintiffs were "a

 3 A-3606-15T4
direct recipient of those good works." The judge added: "[Sabrina]

is a [beneficiary;] she was a spectator at a swim meet for her

daughter hosted by PTAC at the university's building[,] and she

clearly was a [beneficiary] of Princeton."

 On appeal, plaintiffs argue that Princeton, an educational

institution typically afforded immunity under the CIA, "was not

engaged in the performance of the educational objectives it was

organized to advance" on the day that Sabrina was injured. They

contend Princeton's stated purpose is the education of

undergraduates and graduates, not the minor children who

participated in PTAC's activities. Plaintiffs conclude, "youth

sports offered by an outside organization . . . was clearly not

an educational objective [that] Princeton . . . was organized to

advance." Moreover, they argue that because PTAC was not a

charitable organization, Princeton was not entitled to immunity.

 We review the motion judge's grant of summary judgment de

novo and apply the same standard as the trial court. Cypress

Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C., 226 N.J. 403,

414 (2016). Summary judgment must be granted if there is no

genuine issue of material fact challenged and the moving party is

entitled to judgment as a matter of law. R. 4:46-2. No special

deference is afforded to the legal determinations of the trial

court when no issue of fact exists. Templo Fuente De Vida Corp.

 4 A-3606-15T4
v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199

(2016) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,

140 N.J. 366, 378 (1995)). Whether an entity is entitled to

immunity under the CIA is a legal question subject to our de novo

review. Roberts v. Timber Birch-Broadmoore Athletic Ass'n, 371

N.J. Super. 189, 197 (App. Div. 2004).

 We conclude from our de novo review of the record that the

motion judge correctly awarded summary judgment in favor of

Princeton because it was entitled to the immunity from liability

provided for by the CIA. The CIA is deemed remedial and is to be

"'liberally construed' in favor of the protected entities." P.V.

ex rel T.V. v. Camp Jaycee, 197 N.J. 132, 167 (2008) (quoting

N.J.S.A. 2A:53A-10). The CIA provides immunity to any "nonprofit

corporation . . . organized exclusively for religious, charitable

or educational purposes" where the injured person

 is a beneficiary, to whatever degree, of the
 works of such nonprofit corporation . . . ;
 provided, however, that such immunity from
 liability shall not extend to any person who
 shall suffer damage from the negligence of
 such corporation . . . or of its agents or
 servants where such person is one unconcerned
 in and unrelated to and outside of the
 benefactions of such corporation, society or
 association.

 [N.J.S.A. 2A:53A-7(a)]

 5 A-3606-15T4
The scope of the CIA's immunity extends to the buildings and other

facilities used by the charitable organization to fulfill its

qualifying purpose. N.J.S.A. 2A:53A-9.

 "[A]n entity qualifies for charitable immunity when it '(1)

was formed for nonprofit purposes; (2) is organized exclusively

for religious, charitable or educational purposes; and (3) was

promoting such objectives and purposes at the time of the injury

to plaintiff who was then a beneficiary of the charitable works'"

O'Connell v. State, 171 N.J. 484, 489 (2002) (quoting Hamel v.

State, 321 N.J. Super. 67, 72 (App. Div. 1999)). "Entities that

can prove they are organized exclusively for educational or

religious purposes automatically satisfy the second prong of the

charitable immunity standard"; that is, "no further financial

analysis is required to satisfy the second prong of the [CIA]."

Ryan v. Holy Trinity Evangelical Lutheran Church, 175 N.J. 333,

346 (2003).

 "The established test for determining whether a party is a

beneficiary of the works of a charity has two prongs." Id. at

350. "The first is that the institution pleading the immunity,

at the time in question, 'was engaged in the performance of the

charitable objectives it was organized to advance.'" Ibid.

(quoting Anasiewicz v. Sacred Heart Church, 74 N.J. Super. 532,

536 (App. Div.), cerif. denied, 38 N.J. 305 (1962)). "The second

 6 A-3606-15T4
is that the injured party must have been a direct recipient of

those good works." Ibid. (citing DeVries v. Habitat for Humanity,

290 N.J. Super. 479, 487-88 (App. Div. 1996), aff’d o.b., 147 N.J.

619 (1997)).

 In determining whether the institution was engaged in the

performance of the charitable objectives it was organized to

advance, a non-profit organization exclusively dedicated to

religious or educational purposes is afforded "substantial

latitude in determining the appropriate avenues for achieving

their objectives." Bloom v. Seton Hall Univ., 307 N.J. Super.

487, 491 (App. Div.), certif. denied, 153 N.J. 405 (1998). The

term "education," is defined broadly in the CIA "and [is] not

limited to purely scholastic activities." Estate of Komninos v.

Bancroft Neurohealth, Inc., 417 N.J. Super. 309, 320 (App. Div.

2010) (alteration in original) (quoting Orzech v. Fairleigh

Dickinson Univ., 411 N.J. Super. 198, 205 (App. Div. 2009)); see,

e.g., Roberts, supra, 371 N.J. Super. at 194 ("[The defendant]'s

purpose of teaching and promoting good citizenship and

sportsmanship and assembling teams and groups for participation

in sports qualifies it as a non-profit organization within the

scope of the [CIA]."); Morales v. N.J. Acad. of Aquatic Scis., 302

N.J. Super. 50, 54 (App. Div. 1997) (citation omitted) ("[A] non-

profit corporation may be organized for 'exclusively educational

 7 A-3606-15T4
purposes' even though it provides an educational experience which

is 'recreational' in nature.").

 The CIA may afford immunity to "a non-profit entity's rentals

to members of the general public for social and recreational

activities." Lax v. Princeton Univ., 343 N.J. Super. 568, 573

(App. Div. 2001) (citing Bieker v. Cmty. House of Moorestown, 169

N.J. 167, 177 (App. Div. 2001)). In Lax, we extended immunity

under the CIA to a claim for damages caused by injuries sustained

by a retiree who fell on Princeton's property while attending an

unaffiliated chamber symphony's performance in an auditorium it

rented from Princeton. We held that immunity applied when use of

a nonprofit organization's facility is not dominated by rentals

to for-profit entities and found that the use of Princeton's

facilities by members of the general public serves important social

and recreational needs of the community. Id. at 573 (citing

Bieker, supra, 169 N.J. at 177).

 We discern no difference between the injured retiree's claim

in Lax and that of Sabrina in this case. We therefore similarly

hold that Princeton "is entitled to immunity from [plaintiff's]

claim [here that] aris[es] out of the rental of an [indoor swimming

pool] to another . . . entity that uses the facility for similar

educational purposes." Ibid. We conclude that, like the plaintiff

in Lax, Sabrina was a beneficiary of Princeton's educational

 8 A-3606-15T4
purposes as contemplated by the CIA's "use of the words 'to

whatever degree' modifying the word 'beneficiary' in the statute."

Ryan, supra, 175 N.J. at 353 (quoting Gray v. St. Cecilia's School,

217 N.J. Super. 492, 495 (App. Div. 1987)). "Those who are not

beneficiaries must be [shown to be] 'unconcerned in and unrelated

to' the benefactions of such an organization." Ibid. (quoting

Gray, supra, 217 N.J. Super. at 495). Spectators at sporting

events are "[c]learly" beneficiaries for purposes of the CIA.

Pomeroy v. Little League Baseball, 142 N.J. Super. 471, 475 (App.

Div. 1976); see also Bieker, supra, 169 N.J. at 171. As a spectator

and mother of a participant in an educational endeavor taking

place on Princeton's premises, Sabrina was a beneficiary because

she clearly benefited to some degree by attending the swim meet

in which her child participated, regardless of whether PTAC

operated as a for profit or nonprofit entity.

 Affirmed.

 9 A-3606-15T4