199 N.J. Super. 179 (1985)
488 A.2d 1064
DAVID JEROLAMON AND JEAN JEROLAMON, PLAINTIFFS-APPELLANTS,
v.
FAIRLEIGH DICKINSON UNIVERSITY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 11, 1985.
Decided March 4, 1985.
*181 Before Judges DREIER and SHEBELL.
James R. Heaney argued the cause for appellants.
Kevin F. Colquhoun argued the cause for respondent (Colquhoun & Colquhoun, P.A., attorneys).
The opinion of the court was delivered by SHEBELL, J.A.D.
Jean and David Jerolamon appeal the entry of two summary judgment orders. The first dismisses Counts Six, Fourteen, Sixteen, Nineteen and Twenty, as negligence counts barred by defendant's cloak of charitable immunity under N.J.S.A. 2A:53A-7 et seq. The second dismisses purported libel Counts *182 One, Seven, Eight, Nine, Ten, Eleven, Fifteen and Sixteen upon the court's finding that plaintiffs failed to prove actual malice to overcome defendant's qualified privilege. Both orders dismiss Count Sixteen, one referring to it as a negligence count and the other as a libel count. However, Count Sixteen alleges "... defendants have intentionally inflicted mental distress against said plaintiffs." It should not have been dismissed by either order.
We consider first the allegation that plaintiffs are barred from recovery against Fairleigh Dickinson University because of charitable immunity under N.J.S.A. 2A:53A-7. Our review of the plaintiffs' allegations and the applicable law satisfies us that Fairleigh Dickinson University is not in these circumstances entitled to such protection.
The charitable immunity statute was passed as a legislative response to the 1958 Supreme Court rejection of the charitable immunity doctrine which had been the law of this State. See Dalton v. St. Luke's Catholic Church, 27 N.J. 22 (1958); Collopy v. Newark Eye and Ear Infirmary, 27 N.J. 29 (1958); Benton v. Y.M.C.A., 27 N.J. 67 (1958). It was not the intent of the Legislature to change the preexisting immunity but merely to preserve it as it had previously existed. Anasiewicz v. Sacred Heart Church, 74 N.J. Super. 532, 535 (App.Div. 1962), certif. den. 38 N.J. 305 (1962). The statute was first to be effective for only one year, commencing July 1, 1958, with the thought that charities might take steps to protect themselves by obtaining insurance; however, the statutory immunity was later adopted as a permanent enactment. See L. 1958, c. 131 and L. 1959, c. 90.
Plaintiffs' complaint contains numerous allegations of both intentional and negligent conduct including harassment, assault, malicious prosecution, false arrest, libel, violations of rights, and conspiracy, over an extended period of time. Count Six alleges a negligent assault by a security officer upon David Jerolamon on June 7, 1981. David was upon the premises on *183 that evening attending a social gathering among persons he maintains were unrelated to the University or its charitable purposes. The group paid $40 to hold an affair on the patio of the University mansion. No fee is charged to groups which are related to the University. Food and beverages including alcohol were served. When the affair was over David and others cleaned up and carried the excess food and beverages to the cars.
Plaintiff Jean had been employed on the University registration staff for 25 years. She and others on the Registrar's staff had prior to this occasion experienced a series of unpleasant incidents with security guards at the University. After the party she and a neighbor went to the University security office to obtain keys to the mansion in which her office was located. The security guards filed reports depicting Mrs. Jerolamon as disorderly and claiming they observed that she and her husband were unfit to drive their automobiles. David's allegations of a negligent assault on that evening arise out of the security officer's attempt to arrest him for operating his automobile while intoxicated.
Fairleigh Dickinson University maintains it is a non-profit institution of higher learning dedicated to the pursuit of educational goals and activities and community relations. For purposes of this appeal we need take no issue with its contention. The University correctly points out that N.J.S.A. 2A:53A-10 requires that the statute be "liberally construed so as to afford immunity ... in furtherance of the public policy for the protection" of charitable, religious, hospital or educational organizations. Defendant adds: "It is clear that the recreational activity engaged in was an adjunct to the purpose for which Fairleigh Dickinson University was organized." The University's attempt to focus upon the social function as being within the University's charitable and educational purposes is misdirected.
N.J.S.A. 2A:53A-7 provides immunity against claims of

*184 ... any person who shall suffer damages from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such non-profit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person who shall suffer damages from the negligence of such corporation, society or association or its agents or servants where such person is one unconcerned in or unrelated to and outside of the benefactions of such corporation, society or association.... [(emphasis ours)]
The fact that the plaintiffs attended a social gathering at the University on that evening, even if coupled with the questionable conclusion that plaintiffs benefited from the works of the University through such attendance, is not sufficiently related to the incident and damage complained of. According to plaintiffs' allegations the actions by the security guards were related to Jean Jerolamon's status and activities as a registration officer. Plaintiffs' initial presence upon the University grounds on June 7, 1981 to attend a social gathering and any benefit derived lacks sufficient nexus to the later actions of the security guards. Our view is reinforced by an examination of Count Fourteen alleging negligent assault on August 19, 1981. There, David was upon the premises to pick his wife up from work. Likewise, the nineteenth count alleges an extended course of conduct by University security guards and personnel against the plaintiffs and seeks to establish liability on the basis of negligent hiring of such guards. Count Twenty refers to the same extended course of conduct and alleges the Director of Safety of the University intentionally and negligently refused to prevent it.
We are satisfied, considering the wrongs and damages for which plaintiffs seek recovery, that they must be considered strangers to the charitable and educational purposes of the University. Nor should the statute stand in the way of recovery because of Jean's employment relationship. Cf. Mayer v. FairLawn Jewish Center, 38 N.J. 549, 553-54 (1962). We need not decide whether the statute would apply if plaintiffs suffered injury directly as a result of their attendance at the social event.
*185 The trial court in ruling on defendant's request for summary judgment as to the libel counts ruled as a matter of law that there was a qualified privilege surrounding the reports and communications of the University personnel. The determination of the existence of a privilege is a matter for the court to decide. Sokolay v. Edlin, 65 N.J. Super. 112, 124 (App.Div. 1961). It is not disputed that there is a conditional privilege surrounding the alleged defamations thereby requiring plaintiffs to prove actual malice. See Coleman v. Newark Morning Ledger Co., 29 N.J. 357, 380 (1959). Here, however, the question of actual malice must be determined by a jury. Ibid. Plaintiffs in asserting malice do not depend solely on the circumstantial evidence of the ongoing feud between the Security Department and the Registration staff. Plaintiffs' proof of malice is direct. They offer testimony of eyewitnesses to attest that the reported observations of the security guards concerning the acts and conditions of the plaintiffs were untrue in that they never occurred, and further that the guards were there, knew they were untrue and fabricated the story. Actual malice is demonstrated where one prepares false and fabricated reports knowing that they are such. Cf. Krumholz v. TRW, Inc., 142 N.J. Super. 80, 84-85 (App.Div. 1976), certif. den. 71 N.J. 532 (1976).
There is no merit in the suggestion that there was no legally recognizable publication of the reports. It is claimed that those receiving the reports, including the Director of Campus Safety and the Provost, were within the circle of those having a duty to supervise the activities of the security guards. That the Director and Provost had a relationship of duty to the guards merely provides the basis for a qualified privilege. Alternatively, it is maintained that Mrs. Jerolamon herself requested an investigation of the false reports causing their publication. We find sufficient facts alleged to warrant a jury finding of publication prior to plaintiff's request. Moreover, when one prepares a report knowing it contains fabricated and false information and files it knowing that in the course of *186 business it is available to others, such person cannot complain, particularly after refusing to withdraw the false report, that the defamed person insisted upon recourse to a higher official or appellate process to obtain correction or suppression of the report. Any other conclusion would leave such persons at their peril never knowing when the defamatory report would be published to their detriment.
We reverse both summary judgment orders and remand. We do not retain jurisdiction.