NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1532
_____

JOSHUA PARK,
Appellant

v.

DIMITRI TSIAVOS;
LEONIDAS TSIAVOS,
ELIZABETH TSIAVOS,
CHODAE COMMUNITY CHURCH;
_____

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 2-13-cv-00616
District Judge: The Honorable William J. Martini

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 12, 2017

Before: SMITH, *Chief Judge,* JORDAN, and SHWARTZ, *Circuit Judges*

(Filed: February 9, 2017)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

1

SMITH, *Chief Judge.*

Plaintiff Joshua Park regularly played recreational basketball in the gym of the Cho Dae Presbyterian Church of New Jersey ("the Church"). During one game on June 13, 2012, several members of an opposing team, including defendant Dimitri Tsaivos, engaged Park in a fight. According to Park, his attackers made several comments that referred to Park's Asian race. Park asserts the following claims: (1) premises liability against the Church; (2) conspiracy to interfere with his civil rights in violation of 42 U.S.C. § 1985(3), against Tsaivos and several John Doe defendants; (3) negligence, assault, and battery against Tsaivos; and (4) negligent supervision against Tsaivos's parents.

The District Court granted summary judgment on the state premises-liability claim and the federal conspiracy claim. It then declined supplemental jurisdiction over the remaining state-law claims. This timely appeal followed.[1] For the following reasons, we will affirm.

I

We begin with the District Court's decision to grant summary judgment on the claims for premises liability and civil rights conspiracy. We review de novo,

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons discussed in Section II.A of this opinion, diversity jurisdiction is lacking.

applying the same standard as the District Court. *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). We will affirm as to each claim.

A

The District Court held that the Church is immune from Park's claim of premises liability under the New Jersey Charitable Immunity Act.[2] We agree.

The Charitable Immunity Act provides, *inter alia*, as follows:

> No nonprofit corporation, society or association organized exclusively for religious, charitable or educational  purposes . . . shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; provided, however, that such immunity from liability shall not extend to any person . . . [who is] unconcerned in and unrelated to and outside of the benefactions of such corporation, society or association.

---

[2] As a preliminary matter, Park argues that the Church failed to comply with Rule 56.1 of the Local Civil Rules of the United States District Court for the District of New Jersey, which requires a party moving for summary judgment to enumerate the undisputed facts. According to Park, the Church did so, but not in a separate document as required by the rule. But a district court is permitted "to waive a requirement of its local rules" where it has "a sound reason for doing so" and "no party's substantial rights are unfairly jeopardized." *United States v. Eleven Vehicles*, 200 F.3d 203, 215 (3d Cir. 2000) (citation omitted). The District Court did so in this case because the Church substantially complied with the rule, providing full notice to the court and parties as to the grounds for the Church's motion. We conclude that the District Court did not abuse its discretion by excusing a technical error in the statement of undisputed facts. *See id.* at 214 (applying abuse of discretion review).

N.J. Stat. Ann. § 2A:53A-7(a). Under this provision, "an entity qualifies for charitable immunity when it '(1) was formed for nonprofit purposes; (2) is organized exclusively for religious, charitable or educational purposes; and (3) was promoting such objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works.'" *Hardwicke v. Am. Boychoir Sch.*, 902 A.2d 900, 916 (N.J. 2006) (quoting *O'Connell v. State*, 795 A.2d 857, 860 (N.J. 2002)).

The Charitable Immunity Act is supported by "strong" public policy considerations. *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 463 (N.J. 2008). "The Legislature has determined that the proper way to encourage charity in New Jersey and to guarantee continuance of the good works charities provide is to insure they will not have to expend their resources on litigation." *Id.* Thus, the Supreme Court of New Jersey has instructed that the statute be "liberally construed." *Id.* (quoting *Monaghan v. Holy Trinity Church*, 646 A.2d 1130, 1133 (N.J. Super. Ct. App. Div. 1994)).

In light of those policy considerations, the Supreme Court of New Jersey has held that charitable work includes providing "facilities for the social and recreational needs of organizations and individuals." *Bieker v. Cmty. House of Moorestown*, 777 A.2d 37, 43 (N.J. 2001). The Court recognized that principle in a case factually similar to this one: a young victim was injured when he fell off the

4

fire escape of a nonprofit's gymnasium where his father was playing basketball. *Id.* at 40. The Supreme Court of New Jersey concluded that operating "a center of community life" serves "a recognized charitable purpose." *Id.* at 43. The Court also held that "[t]he child was plainly a recipient of [the organization's] 'benefactions,' even if only as a companion of his father and a spectator at his father's basketball game." *Id.* at 45.

In this case, the only question is whether Park was a beneficiary of the Church's charitable works at the time he was injured on the premises. In accordance with *Bieker*, we conclude that he was. If the spectator child in *Bieker* was a recipient of the defendant's benefactions, it follows that Park was even more directly a recipient by participating in a similar basketball game. *See also Pomeroy v. Little League Baseball of Collingswood*, 362 A.2d 39, 41 (N.J. Super. Ct. App. Div. 1976) ("Clearly a spectator at a Little League baseball game is a beneficiary of defendant's works . . . ."); *Anasiewicz v. Sacred Heart Church of New Brunswick*, 181 A.2d 787, 790 (N.J. Super. Ct. App. Div. 1962) (wedding guest is a beneficiary).

Park relies on several pre-*Bieker* cases where New Jersey's intermediate appellate court denied charitable immunity. *See, e.g.*, *Jerolamon v. Fairleigh Dickinson Univ.*, 488 A.2d 1064 (N.J. Super. Ct. App. Div. 1985); *Book v. Aguth Achim Anchai of Freehold*, 245 A.2d 51 (N.J. Super. Ct. App. Div. 1968). These

5

cases are distinguishable because they involved for-profit activities, not benefactions. *Jerolamon* involved a social gathering at a university organized by a group that paid a fee to use certain property, 488 A.2d at 1066, and the plaintiff in *Book* paid an admission fee to attend a synagogue bingo game, 245 A.2d at 52. Likewise in *Bieker*, the Supreme Court of New Jersey noted that the defendant rented space to various groups and individuals. The Court remanded for further proceedings on the question of whether the "dominant motive [here] is charity or some other form of enterprise." 777 A.2d at 45 (alteration in original) (citation omitted). Here, Park has not created a dispute of fact as to the Church's dominant motive. Park has not claimed that the Church rented the gymnasium, charged a fee to play recreational basketball, or otherwise had a profit motive in tension with its charitable purpose of providing a "center of community life." *Id.* at 43.

Park also argues that the Church is not immune because he was not invited onto the premises. However, Park has not identified any authority requiring him to be an invitee. If he were a "stranger" to the church, the Charitable Immunity Act might not apply. *Cf. Brown v. St. Venantius Sch.*, 544 A.2d 842, 847 (N.J. 1988) (no immunity where charity failed to remove snow and ice from an abutting sidewalk, injuring a pedestrian); *Mayer v. Fairlawn Jewish Ctr.*, 186 A.2d 274, 277 (N.J. 1962) (no immunity because the injured individual was on the religious organization's premises for the "fulfillment of his function and obligation as an

employee"). But Park is no stranger to the church. It is undisputed that his parents belonged to the congregation and Park played basketball in the gymnasium with his friends "at least once a week." PA0362. His use of the gymnasium was therefore in fulfillment of the church's recognized charitable purpose: providing for the "social and recreational needs" of the community. *Bieker*, 777 A.2d at 44.

We thus conclude that the Church is immune from Park's premises-liability claim pursuant to N.J. Stat. Ann. § 2A:53A-7.

B

Park's next claim is that his attackers conspired to interfere with his civil rights in violation of 42 U.S.C. § 1985(3). Park argues that the District Court erred by granting summary judgment on the basis of the attackers' state of mind (i.e., the presence or absence of racial animus), which should have been a question reserved for the jury. But that is not what the District Court did. The District Court granted summary judgment "for a second, independent reason:" Park's failure to identify a "right guaranteed against private impairment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 274 (1993).

Section 1985(3) makes it unlawful for "two or more persons . . . [to] conspire . . . for the purpose of depriving . . . any person . . . of the equal protection of the laws, or the equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). The Supreme Court has held that the statute covers private conspiracies.

7

*Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971). But this Court has interpreted the statute to apply to private conspiracies in "rather limited circumstances" in order to avoid creating a "general federal tort law." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 805 (3d Cir. 2001).

Because § 1985(3) "does not itself create any substantive rights," *id.*, a private conspiracy claim must rely on the violation of a right "constitutionally protected against private interference," *Bray*, 506 U.S. at 274; *cf. United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 833 (1983) ("[T]he right claimed to have been infringed has its source in the First Amendment. Because that Amendment restrains only official conduct, to make out their § 1985(3) case, it was necessary for respondents to prove that the state was somehow involved in or affected by the conspiracy."). Under those principles, the Supreme Court has recognized only two rights protected from private conspiracy under § 1985(3): "the right to be free from involuntary servitude and the right to interstate travel." *Brown*, 250 F.3d at 805.

In this case, Park has not alleged a violation of either. *See id.* at 806 ("The great weight of precedential authority . . . supports the traditional limitation of § 1985(3) to questions of interstate travel and involuntary servitude . . . ."). Nor has Park argued that the list of cognizable rights should be expanded. While Park invokes general principles of equal protection, it is "firmly embedded in our

8

constitutional law" that the equal protection guaranteed by the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." *United States v. Morrison*, 529 U.S. 598, 621 (2000) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)).

Thus, because Park has not identified a constitutional right guaranteed against private impairment, Park's claim under § 1985(3) is not viable.

## II

After correctly granting summary judgment on those two claims, including the only federal cause of action, the District Court declined to exercise supplemental jurisdiction over the remaining state-law claims. Park argues that this was error for two reasons: (1) diversity jurisdiction is proper, and (2) it was error for the District Court to exercise supplemental jurisdiction over one, but not all, state-law claims. We reject both arguments.

## A

Park avers that the District Court had diversity jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1332, notwithstanding the absence of a federal question. "Our review for lack of subject matter jurisdiction is plenary." *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 180 (3d Cir. 2008). "A district court's determination regarding domicile or citizenship is a mixed question of fact and law, but primarily one of fact, which we review for clear error." *McCann v.*

*Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006). We conclude that diversity jurisdiction is lacking.

For purposes of diversity jurisdiction, "the domicile of an individual is his true, fixed and permanent home and place of habitation." *Vlandis v. Kline*, 412 U.S. 441, 454 (1973). "[A] domicile once acquired is presumed to continue until it is shown to have been changed." *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3d Cir. 2011). A party claiming to have a new domicile must: (1) "carry the burden of production to rebut the presumption in favor of an established domicile," and (2) "carry the burden of persuasion by proving that a change of domicile occurred, creating diversity of citizenship" by a "preponderance of the evidence." *McCann*, 458 F.3d at 289.

In this case, it is undisputed that defendants are New Jersey domiciliaries. Therefore, for diversity jurisdiction to be proper, Park must have been domiciled in a state other than New Jersey at the time of filing. *See Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 152 (3d Cir. 2009).

Following jurisdictional discovery, the record discloses that Park attended college in New York at the time of filing, but his family's permanent residence remained in New Jersey. Park does not dispute that he was listed as a resident dependent on his parents' most recent New Jersey state tax returns, or that he renewed his New Jersey driver's license as recently as January 2013—the same

10

month this action was filed. Park has not obtained a driver's license, registered to vote, or paid taxes in New York. *See Bradley v. Zissimos*, 721 F. Supp. 738, 739 n.3 (E.D. Pa. 1989) ("It is generally presumed that a student who attends a university in a state other than the student's 'home' state intends to return 'home' upon completion of studies."). On this record, the District Court did not commit clear error in concluding that Park failed to overcome the presumption in favor of his existing domicile. We therefore conclude that he was a New Jersey domiciliary at the time of filing, rendering diversity jurisdiction improper.

Accordingly, the District Court's jurisdiction depended solely on Park's federal cause of action. Once the District Court granted summary judgment on that claim, it was appropriate to determine whether to retain supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c).

B

Second, Park argues that the District Court erred by granting summary judgment on the premises-liability claim while declining supplemental jurisdiction over the other state-law claims. According to Park, the District Court's decision was "self-contradictory," and violates the principle that a court cannot decide the merits of a claim over which it lacks jurisdiction. We reject Park's argument.

The District Court's decision is not self-contradictory because it is "absolutely clear" that "dismissal under § 1367(c) is discretionary[] and not

jurisdictional." 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3567.3 (3d ed. 2008). This Court's decision in *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172 (3d Cir. 1999), is directly on point. *Figueroa* held that "[i]t is of no effect that the District Court exercised jurisdiction over one of [plaintiff's] territorial claims—Count III based on the Virgin Islands Civil Rights Act—before declining to exercise supplemental jurisdiction over the remaining claims." *Id.* at 181 n.10. "[A]lthough exercising supplemental jurisdiction over one claim and declining to exercise jurisdiction over other claims is unusual, it is not an abuse of discretion." *Id.* (citing *Southerland v. Hardaway Mgmt., Inc.*, 41 F.3d 250, 256–57 (6th Cir. 1994)).[3]

Accordingly, the District Court's decision to enter summary judgment on the premises-liability claim did not exceed the bounds of the Court's jurisdiction.

IV

For the foregoing reasons, we will affirm.

---

[3] The district courts should continue to apply the usual standard, which requires dismissal under § 1367(c)(3) "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification" for retaining supplemental jurisdiction. *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster,* 45 F.3d 780, 788 (3d Cir. 1995)). We review that determination for abuse of discretion. *Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 104 (3d Cir. 2015). Park has not argued that the District Court abused its discretion under that standard.